UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>　　　　　　　　　　　　　　　　　　) <br>　　　　　　　　　Plaintiff, 　　　　　) <br>　　v.　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　)<br>THEREN PHILLIP FRAZIER,　　　　) <br>　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　Defendants.　　　　)<br>　　　　　　　　　　　　　　　　　　) | Case No.: 2:15-cr-044-GMN-GWF<br><br>**ORDER** |

Pending before the Court is the Motion in Limine (ECF No. 61) filed by Defendant Theren Phillip Frazier ("Defendant") to preclude testimony of expert witnesses regarding cellular phone location testimony. The Government filed a Response (ECF No. 64).

## I.　BACKGROUND

Defendant is currently charged with twenty-two counts in the Superseding Indictment (ECF No. 54) filed on August 5, 2015: Counts One, Four, Seven, Fifteen, and Eighteen – Conspiracy to Interfere with Commerce by Robbery, 18 U.S.C. §§ 1951(a) and 2; Counts Two, Five, Eight, Sixteen, and Nineteen – Interference with Commerce by Robbery, 18 U.S.C. §§ 1951 and 2; Counts Three, Six, Nine, Eleven, Fourteen, Seventeen, and Twenty – Brandishing of a Firearm in a Crime of Violence, 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; Counts Ten and Thirteen – Bank Robbery, 18 U.S.C. §§ 2113(a) and 2; Count Twelve – Conspiracy to Commit Bank Robbery, 18 U.S.C. §§ 371 and 2; Count Twenty-One – Felon in Possession of a Firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and Count Twenty-Two – Tampering With a Witness by Intimidation and Threats, 18 U.S.C. § 1512(b)(1). According to the Superseding Indictment, these counts stem from seven separate robberies, allegedly occurring between September 6, 2014 and November 10, 2014.

The Government intends present FBI Special Agent (SA) Chad Fitzgerald, a member of the FBI's Cellular Analysis Survey Team (CAST), as an expert in historical cell site analysis. (Resp. to Mot. in Lim. ("Resp. to MIL") 2:13–14, 2:20–21, ECF No. 64).  SA Fitzgerald will provide testimony indicating that on the dates and near the times of the robberies set out in the Superseding Indictment, the wireless phone associated with Defendant acquired its signal from "towers in the general geographic area of the robberies, or in a pattern moving away from the scene of the robberies." (*Id.* 3:4–8).  SA Fitzgerald is expected to testify "as to the time and duration of the various signals that were sent and received by Defendant['s] cell phone on these occasions." (*Id.* 3:8–9).  Furthermore, the Government anticipates that SA Fitzgerald will testify, *inter alia*, that he conducted a "drive test" in the vicinity of the robbery locations to determine the actual coverage of the relevant cell towers and sectors, thereby developing a coverage "footprint." (*Id.* 3:11–14).

In his Motion in Limine, Defendant argues that the expert witness testimony should be excluded as evidence because it is not probative and that the testimony does not meet the standard for admissibility for expert or scientific evidence. (Mot. in Lim. ("MIL") 1:28–2:2, ECF No. 61).  Thus, Defendant requests that the Court preclude any expert witnesses from providing testimony regarding cell phone location analysis, or alternatively, that the Court hold a preliminary evidentiary hearing to assess the credibility of the expert witness testimony. (*Id.* 1:14–18).  In its response, the Government argues that expert witness testimony regarding cell site analysis is reliable and relevant to this case, and that a preliminary evidentiary hearing is unnecessary because cell site analysis testimony is routinely accepted as evidence by federal courts. (Resp. to MIL 3:19–22).

## II. LEGAL STANDARD

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a).  In order to satisfy the burden of proof for Rule

104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Federal Rule of Evidence 103(c)). In limine rulings "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41 (noting that in limine rulings are always "subject to change," especially if the evidence unfolds in an unanticipated manner).

## III.  DISCUSSION

Under Federal Rule of Evidence 702, an expert may testify if, among other requirements, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

The Court must ensure that specialized evidence is relevant and reliable. *Daubert*, 509 U.S. at 589.

> Faced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id.* at 592–93 (footnote omitted). A judge has discretion under Rule 702 as a "gatekeeper to decide what evidence is relevant, reliable, and helpful the trier of fact." *Desrosiers v. Flight*

*Int'l of Fla. Inc.*, 156 F.3d 952, 961 (9th Cir. 1998).  As gatekeepers, district court judges are to consider four nonexclusive factors to determine if the expert opinion is developed by the scientific method:  "(1) whether the method has gained general acceptance in the relevant scientific community, . . . (2) whether the method has been peer-reviewed," (3) "whether the method 'can be (and has been) tested,' and (4) whether there is a 'known or potential rate of error.'" *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1420 (9th Cir. 1998) (quoting *Daubert*, 509 U.S. at 594).

The methodology of cell phone tracking satisfies the "scientific knowledge" factor of *Daubert* because experts use a "drive test" as "field experiments" for approximating the location of cell phones.  *United States v. Cervantes*, No. 12-CR-00792-YGR, 2015 WL 5569276, at *3–4 (N.D. Cal. Sept. 22, 2015).  Additionally, several federal courts have admitted other methods of cell phone tracking, such as "historical cell site analysis" for use as testimony at trial. *United States v. Johnson*, No. 14-cr-00412-THE, 2015 WL 5012949, at *6 (N.D. Cal. Aug. 24, 2015), *Jimenez v. Walker*, No. 08-5489-YGR, 2012 WL 4051124, at *18 (N.D. Cal. Sept. 13, 2012).  Peers in the field have recognized the scientific methodology of cell phone tracking accuracy is not without error because other elements such as environmental factors are considered in tracking the location of a cell phone. Aaron Blank, *The Limitations and Admissibility of Using Historical Cell Site Data to Track the Location of A Cellular Phone*, 18 Rich. J.L. & Tech. 3, 7 (2011).  However, "drive test" cell phone tracking methodology is generally accepted by recognized authorities in the field.  *Cervantes*, 2015 WL 5569276, at *3 (N.D. Cal. 2015); *see also Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates*, 583 F.3d 716 (9th Cir. 2009) (recognizing the "drive test" as an accepted methodology in a different context); *T-Mobile W. Corp. v. City of Huntington Beach*, No. CV 10-2835 CAS EX, 2012 WL 4867775, at *12 (C.D. Cal. Oct. 10, 2012) (same); *Metropcs Inc. v. City & Cty. of San Francisco*, No. C 02-3442 PJH, 2006 WL 1699580, at *7–10 (N.D. Cal. June 16, 2006) (same).

Here, the expert witness testimony fulfills the reliability and relevance requirements of *Daubert*. Similar to *Cervantes* and *Johnson*, the Government's expert witness, SA Fitzgerald, uses historical cell site analysis and the "drive test" scientific methodology to approximate Defendant's cell phone location. (Resp. to MIL 3:11–14). Additionally, the Government's expert acknowledges that the scientific methodology used to track Defendant's location is not completely accurate since these methods provide only approximations. (*Id.* 3:10–11) ("SA Fitzgerald will not testify that the relevant phone signals were sent from or received in a precise geographic location."). As such, the scientific methodology used by SA Fitzgerald does not depart from procedures of approximating cell phone locations used by other experts in the field. Further, this testimony is relevant because it allegedly places Defendant near the location of the crimes at the time that the crimes occurred. (*Id.* 3:8–14). Accordingly, SA Fitzgerald's expert witness testimony fulfills the *Daubert* requirements.

The Court does not find it necessary to hold a preliminary evidentiary hearing to further evaluate the expert witness testimony because the Court is exercising its discretionary gatekeeping function in determining the reliability and relevancy of the testimony. *United States v. Jawara*, 474 F.3d 565, 582–83 (9th Cir. 2007) (citing *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000)). Defendant will have the opportunity during trial to cross examine the witness for the jury to determine credibility.

Accordingly, Defendant's Motion in Limine is denied because the Government's expert witness testimony fulfills the *Daubert* factors and is therefore not excluded by Rule 702.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that the Defendant's Motion in Limine (ECF No. 61) is **DENIED.**

**DATED** this __16__ day of September, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Court